UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID HILL,

    Plaintiff,                                      Case No.

v.                                                Hon.

FERRELLGAS, INC.; and
WALMART INC.,

    Defendants.
_____/

# PLAINTIFF'S COMPLAINT AND JURY DEMAND

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this Complaint that is either pending or was previously filed and dismissed, transferred or otherwise disposed of after having been assigned to a Judge in this Court.

        /s/ *Brandon T. Wolfe*
        **Brandon T. Wolfe (P82421)**

**NOW COMES,** Plaintiff DAVID HILL, by and through his attorneys, WOLFE TRIAL LAWYERS, PLLC, for his Complaint against the above-named Defendants states as follows:

## BACKGROUND AND JURISDICTIONAL AVERMENTS

1. At all times relevant hereto, Plaintiff David Hill resided in the Township of Armada, County of Macomb, State of Michigan.

1

2. Upon information and belief and at all times relevant hereto, Defendant Ferrellgas, Inc., is a foreign profit corporation registered to do business in the State of Delaware, but for purposes of this claim, Defendant resides in this district as it sells, markets and distributes propane tanks in this district pursuant to 28 U.S.C § 1391(b)(1), (c); M.C.L § 600.715(1); M.C.L § 600.711.

3. Upon information and belief and at all times relevant hereto, Defendant Walmart Inc., is a foreign profit corporation with its principal place of business in Bentonville, Arkansas, but for purposes of this claim, Defendant resides in this district as it sells, markets and distributes propane tanks manufactured by Defendant Ferrellgas in this district pursuant to 28 U.S.C § 1391(b)(1), (c); M.C.L § 600.715(1); M.C.L § 600.711.

4. While Defendant Ferrellgas manufactured the propane tank at issue, it is believed that it had an agreement with Defendant Walmart to market, sell and distribute Ferrellgas's "Blue Rhino" propane tank to customers such as Plaintiff.

5. The amount in controversy greatly exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs, interest and attorney fees.

6. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

7. Venue lies in the Eastern District of Michigan pursuant to 28 U.S.C. §1391(b)(1), because all Defendants are "residents" of this district pursuant to 28 U.S.C. §1391(c).

## FACTUAL ALLEGATIONS

8. On or around November 11, 2022, Plaintiff David Hill was on a hunting trip in Michigan's Upper Peninsula.

9. At Plaintiff's campsite, he had a Coleman lantern for both light and heat, and to power this lantern, he used a propane tank

10. After using the propane tank throughout the weekend, Plaintiff and his brother went to Iron Mountain on November 14, 2022, wherein Plaintiff intended to refill his propane tank.

11. While in Iron Mountain, Plaintiff saw a Blue Rhino exchange center at a Walmart, and elected to drop off his now-empty Blue Rhino propane tank for a filled one; a product manufactured by Defendant Ferrellgas, Inc.

12. At all material times, Plaintiff purchased this Ferrellgas-manufactured propane tank from Defendant Wal-Mart's store.

13. Having returned to his campsite, Plaintiff went to connect the Coleman Lantern he had been using to the new Blue Rhino propane tank he obtained from Defendant Wal-Mart.

14. As Plaintiff made the connection—specifically, he thread the distribution post Type 1 connector onto to the cylinder service valve outlet—propane rapidly began spewing from the connection.

3

15. As the propane leaked (unbeknownst to Plaintiff) it struck a heater being operated in Plaintiff's tent nearby the Coleman lantern and caused an explosion.

16. The propane tank exploded in Plaintiff's face causing severe burns.

17. The external leakage of propane that caused this explosion occurred while the post connector was being threaded onto the propane tank's cylinder service valve.

18. The propane discharge arose from a combination of the service handwheel being left open—it should have been closed before being sold to a purchaser such as Plaintiff—and a failure of the service valve's rubber face seal, which was caused by the foreseeable side load from the weight of the lantern post.

19. This propane tank was designed in a manner that allowed the service valve to continue to discharge propane even if there is not an established gas tight connection.

20. That Defendant Ferrellgas had manufactured the propane tank at issue approximately 30 years before Plaintiff purchased it and it contained a 12-year-old service valve that had been painted over.

21. It is upon information and belief, that as of August of 2000—after this specific propane tank was manufactured—there was a national recall for Blue Rhino

cylinders with the same 8-75-3 service valves due to the fact that these containers "can have missing or damaged internal seals in the cylinder valves."

22. The recall went on to warn that it can result in propane leaking and posing a risk of fire and burn injuries.

23. Despite over 20 years of notice that this propane tank had a faulty service line that could result in leaking propane and foreseeable explosions during use, neither Defendant Ferrellgas nor Walmart—who likewise was aware of this potential defect—took any precautions to ensure that the propane tank was properly inspected and/or maintained before placing in the stream commerce.

24. Defendants went a step further than merely failing to inspect and/or maintain given the service valve was painted over in what appeared to be an effort to conceal its age and condition.

## COUNT I
## NEGLIGENCE OF DEFENDANT FERRELLGAS

25. Plaintiff hereby restates and alleges each and every allegation contained in Paragraphs 1 through 24 as if fully set forth herein.

26. Defendant Ferrellgas designed, tested, manufactured, certified, inspected, and/or distributed the subject propane tank.

27. Unbeknownst to Plaintiff, the propane tank was defective in that it either deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications.

5

28. The defect in design or formulation which caused the propane tank's service valve rubber seal to leak propane during foreseeable use, resulting in Plaintiff's injuries and damages, was not caused by an inherent characteristic of the propane tank.

29. Defendant Ferrellgas, Inc., as the manufacturer of this propane tank, owed certain duties to Plaintiff, including, but not limited, to:

   a. Designing, manufacturing and/or distributing non-defective propane tanks (such as, by way of example, ensuring the service valve rubber seal is in an acceptable condition and/or designing the propane tank to cease propane spewing from the same if the rubber seal is not fully closed);
   b. Properly inspecting the propane tanks to ensure they were not defective and fit for their intended purpose;
   c. Providing sufficient and proper warnings, instructions and information regarding said propane tanks to ensure their safe use; and
   d. Recalling said propane tanks upon knowledge that they had or should have had of their defective and unsafe condition.

30. The subject propane tank was not reasonably safe for its intended use when it left the control of Ferrellgas, which included any recurrent inspections that Ferrellgas performs.

31. When the subject propane tank left the control of Ferrellgas, an economically and technically feasible alternative production practice was available that would have minimized or eliminated the danger and prevented the harm to

6

Plaintiff's decedent without significantly impairing the usefulness or desirability of the product to users and without creating equal or greater risk of harm to others.

32. At all times during its use, Plaintiff was unaware of the defective and unreasonably dangerous condition posed by this anticipated, foreseeable use of the propane tank.

33. At the time the propane tank left Defendant Ferrellgas' control, including when Ferrellgas performed inspections thereafter on a routine basis (specifically when Ferrellgas deceptively painted over the defective service valve), Defendant knew, or in the light of reasonably available knowledge or in the exercise of reasonable care should have known, about the defective service valve rubber seal that caused Plaintiff's foreseeable damages and injuries.

34. The propane tank was defective at the time of its manufacture, development, production, testing, inspection (and re-inspections), sale, distribution, in that, and not by way of limitation, said product and its warning, instructions, and directions failed to warn of the dangerous propensities of the product, which risks were known or were reasonably scientifically knowable to Defendant.

35. Defendant Ferrellgas exercised substantial control over the content of a warning or instruction that accompanied the propane tank, and it failed to provide an adequate warning or instruction which advised consumers of potentially defective conditions on the propane tank and/or potentially dangerous uses.

36. At all material times, Plaintiff used the propane tank in compliance with the instructions and intended use.

37. Defendant Ferrellgas is liable as a manufacturing seller to the extent that it failed to warn about the grave dangers posed by the propane tank when used in a fashion such as Plaintiff used it on this fateful day.

38. As the manufacturer of the propane tank, Defendant Ferrellgas breached the duties it owed to Plaintiff in the following ways:

a. Failed to correct known dangerous and hazardous conditions existing on the propane tank and/or warn of the dangerous conditions, including, but not limited to, faulty materials and faulty design;

b. Failed to make reasonable and proper inspections of the propane tank for dangerous and/or hazardous conditions before selling/distributing it;

c. Failed to repair and/or correct and/or warn of any hazardous and/or dangerous conditions, of which the Defendant, its agents, employees and/or representatives had knowledge, or should have had knowledge, by a reasonable and proper inspection of the propane tank after production and before distribution;

d. Failed to instruct all of Defendant's agents, employees and/or representatives on the proper care and maintenance of the propane tank, and/or in the reporting of dangerous and/or hazardous conditions of propane tank's to be sold;

e. Failed to provide agents, employees and/or representatives rules, procedures and/or provide for periodic safety inspections for the discovery and/or correction of dangerous and hazardous conditions on propane tanks to be sold, including the propane tank sold to Plaintiff;

f. Failed to warn users that a reasonable, foreseeable use could result in the propane tank exploding;

g. Failed to provide a safe and suitable propane tank to Plaintiff;

h. Failing to test the propane tank before placing on the market and confirm the warranties were valid;

i. Failed to obtain and provide the adequate and proper maintenance and inspection of the propane tank to be sold so that it would be in a reasonably safe condition for a purchaser, including Plaintiff;

j. Any and all other acts of negligence that become known through the course of this litigation.

39. Based upon the gross negligence, willful disregard and knowing distribution of the subjective defective propane tank and direct foreseeability that injury would occur in this context, non-economic damage caps do not apply to this litigation.

40. The foregoing breaches of duty directly and proximately caused serious injury to Plaintiff.

41. Based on the above, the propane tank was defective and Defendant failed to warn Plaintiff regarding the risks his foreseeable use of the propane tank posed and this was a proximate cause of Plaintiff's injuries, including but not limited to:

a. Permanent serious disfigurement;

b. Severe burns

c. Future Medical Treatment;

d. Physical pain and suffering and discomfort, past, present and future;

9

e. Mental anguish;

f. Fright and shock;

g. Denial of social pleasures and enjoyment;

h. Embarrassment, humiliation or mortification;

i. Medical bills and expenses; and

j. Any and all injuries later discovered or otherwise allowed under Michigan Law.

**WHEREFORE**, Plaintiff respectfully requests judgment in his favor against Defendant, jointly and severally in an amount that is fair and reasonable under the circumstances, plus attorney fees, costs and interest.

## COUNT II
## BREACH OF IMPLIED WARRANTY – DEFENDANT FERRELLGAS

42. Plaintiff hereby restates and alleges each and every allegation contained in Paragraphs 1 through 41 as if fully set forth herein.

43. The propane tank was not reasonably fit for the uses or purposes anticipated or reasonably foreseen by Defendant Ferrellgas when it left Ferrellgas' control.

44. As a direct and proximate result of the breach of implied warranty by Ferrellgas, Inc., Plaintiff suffered grave injuries and damages as previously described.

**WHEREFORE,** Plaintiff respectfully requests judgment in his favor against Defendant, jointly and severally in an amount that is fair and reasonable under the circumstances, plus attorney fees, costs and interest.

## COUNT III
## NEGLIGENCE – DEFENDANT WALMART

45. Plaintiff hereby restates and alleges each and every allegation contained in Paragraphs 1 through 44 as if fully set forth herein.

46. The propane tank at issue in this case was in a defective condition that was unreasonably dangerous to Plaintiff at the time it left Defendant Walmart's control and was placed into the stream of commerce.

47. Given Walmart's role in the possession, marketing, distribution, sale and shipment of the propane tank, Walmart is a non-manufacturing seller for purposes of MCL 600.2947.

48. Walmart engaged in an aggressive sales and advertising campaign of these propane tanks, so much so that Plaintiff was drawn to this "Blue Rhino" exchange by seeing it from the street.

49. There were at all times safer alternative designs available for this propane tank that were economically feasible and the risks of the design at the time Plaintiff was injured outweighed any benefits of the design.

50. The condition of the propane tank when it left the manufacturer's possession (and/or when it was most recently inspected) was the same as when Defendant Walmart sold it to Plaintiff.

51. It is believed that Defendant Walmart and Defendant Ferrellgas had a contract for the sale and distribution of these propane tanks at Walmart's stores, whereas Defendant Walmart was engaged in the business of distributing or otherwise placing, for a commercial purpose, the propane tank and other similar products in the stream of commerce.

52. At all material times, Defendant Walmart knew (or should have known) of the defects this propane tank posed, specifically that the handwheel was left open and the defective service valve rubber seal.

53. Given Walmart's notice of the defects and control of the product at all material times, Walmart is liable as a nonmanufacturing seller.

54. Defendant Walmart exercised substantial control over the content of a warning or instruction that accompanied the propane tank, and Walmart failed to provide an adequate warning or instruction which advised consumers of the grave dangers posed by the propane tank.

55. The warnings and instructions were grossly inadequate and Plaintiff's personal injuries resulted from the lack of the same.

56.     Defendant Walmart is liable as a nonmanufacturing seller to the extent that it failed to warn about the grave dangers posed by the propane tank.

57.     The propane tank's defective design and danger to purchasers was or should have been known to Defendant Walmart given this was a longstanding problem with the Blue Rhino propane tanks and the defect was observable through an inspection of the propane tank before sale when in Walmart's control.

58.     As a seller of the propane tank, Defendant Walmart breached the duties it owed to Plaintiff in the following ways:

    a. Failed to correct known dangerous and hazardous conditions existing on the propane tank and/or warn of the dangerous conditions of the propane tank described above;

    b. Failed to make reasonable and proper inspections of the propane tank for dangerous and/or hazardous conditions before selling it to Plaintiff;

    c. Failed to repair and/or correct and/or warn of any hazardous and/or dangerous conditions, of which the Defendant, its agents, employees and/or representatives had knowledge, or should have had knowledge, by a reasonable and proper inspection of the propane tank when it was controlled and maintained by Walmart;

    d. Failed to instruct all of Defendant's agents, employees and/or representatives on the proper care and maintenance of the propane tank before sale, and/or in the reporting of dangerous and/or hazardous conditions of propane tanks to be sold;

    e. Failed to provide agents, employees and/or representatives rules, procedures and/or provide for periodic safety inspections for the discovery and/or correction of dangerous and hazardous conditions on propane tanks to be sold, including the propane tank sold to Plaintiff;

 f. Failed to provide a safe and suitable propane tank for Plaintiff;

 g. Failed to warn users that a reasonable, foreseeable could result in this sort of injury, particularly in light of previous reports of this sort of injury;

 h. Failed to recall and/or take this propane tank off the market after receiving substantial notice of the dangers it posed;

 i. Failed to obtain and provide the adequate and proper maintenance and inspection of the propane tank to be sold so that it would be in a reasonably safe condition for a purchaser, including Plaintiff;

 j. Any and all other acts of negligence that become known through the course of this litigation.

59. Based upon the gross negligence and knowing distribution of the subjective defective propane tank, non-economic damage caps do not apply to this litigation.

60. Based on the above, the propane tank was defective and was the proximate cause of Plaintiff's injuries, including but not limited to:

a. Permanent serious disfigurement;

b. Severe burns

c. Future Medical Treatment;

d. Physical pain and suffering and discomfort, past, present and future;

e. Mental anguish;

f. Fright and shock;

g. Denial of social pleasures and enjoyment;

  h. Embarrassment, humiliation or mortification;

  i. Medical bills and expenses; and

  j. Any and all injuries later discovered or otherwise allowed under Michigan Law.

  WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant, jointly and severally in an amount that is fair and reasonable under the circumstances, plus attorney fees, costs and interest.

## COUNT IV
## BREACH OF IMPLIED WARRANTY – DEFENDANT WALMART

  61. Plaintiff hereby restates and alleges each and every allegation contained in Paragraphs 1 through 60 as if fully set forth herein.

  62. Defendant Walmart, as stated above, placed the propane tank in the stream of commerce by marketing, advertising and selling the propane tank directly to Plaintiff.

  63. The propane tank was not reasonably fit for the uses or purposes anticipated or reasonably foreseeable by Defendant Walmart when it left Defendant's control.

  64. As a direct and proximate result of the breach of implied warranty by Defendant Walmart, Plaintiff's suffered severe and debilitating injuries, including but not limited to:

  a. Permanent serious disfigurement;

    b. Severe burns

    c. Future Medical Treatment;

    d. Physical pain and suffering and discomfort, past, present and future;

    e. Mental anguish;

    f. Fright and shock;

    g. Denial of social pleasures and enjoyment;

    h. Embarrassment, humiliation or mortification;

    i. Medical bills and expenses; and

    j. Any and all injuries later discovered or otherwise allowed under Michigan Law.

**WHEREFORE,** Plaintiff respectfully requests judgment in his favor against Defendant, jointly and severally in an amount that is fair and reasonable under the circumstances, plus attorney fees, costs and interest.

    Respectfully Submitted,

    **WOLFE TRIAL LAWYERS, PLLC**

    By: /s/ *Brandon T. Wolfe*
    BRANDON T. WOLFE (P82421)
    Attorney for Plaintiff
    2844 Livernois, PO Box 276
    Troy MI 48099
    (313) 450-2015
    brandon@hirethewolfe.com

Dated: August 12, 2024